UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                          :
                                                :       Chapter 7
ADRIAAN SCHILTKAMP and                          :       Case No. 16-13037 (SMB)
ROBIN MARTORELLI SCHILTKAMP,                    :
                                                :
                    Debtors.                    :
-------------------------------------------------------X
JIL MAZER-MARINO, as Chapter 7 Trustee          :
for the Chapter 7 Estates of Adriaan            :       Adv. Proc. No. 18-01545 (SMB)
Schiltkamp and Robin Martorelli Schiltkamp      :
                                                :
                    Plaintiff,                  :
                                                :
        v.                                      :
                                                :
ADRIAAN SCHILTKAMP, *et al.*,                   :
                                                :
                    Defendants.                 :
-------------------------------------------------------X

## MEMORANDUM DECISION (I) DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST ADRIAAN SCHILTKAMP AND (II) GRANTING ADRIAAN SCHILTKAMP'S MOTION TO VACATE ENTRY OF DEFAULT

**A P P E A R A N C E S :**

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
*Attorneys for Jil Mazer-Marino, Chapter 7 Trustee*
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, NY 11530

        Jil Mazer-Marino, Esq.
        Howard B. Kleinberg, Esq.
        Michael Kwiatkowski, Esq.
            Of Counsel

GOTTLIEB & JANEY LLP
*Attorneys for Adriaan Schiltkamp, Robin Martorelli Schiltkamp,*
*A. Jarrad M. Schiltkamp, and Kelsey G.H. Schiltkamp*
Trinity Building
111 Broadway, Suite 701
New York, NY 10006

Derrelle M. Janey, Esq.
David Dinoso, Esq.
    Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

The plaintiff, Jil Mazer-Marino, as chapter 7 trustee ("Trustee") for the estates of

Adriaan Schiltkamp ("Adriaan") and Robin Martorelli Schiltkamp ("Robin," and

together with Adriaan, the "Debtors"), objected to the Debtors' discharge.  After the

Clerk of the Court entered defaults against several defendants, (*Entry of Default*, dated

Sept. 10, 2018 (ECF Doc. # 32),[1] the Trustee moved, *inter alia*, for the entry of a default

judgment denying Adriaan a discharge under 11 U.S.C. § 727(a)(4).[2]  Adriaan opposed

the Default Judgment Motion and moved pursuant to Federal Rule of Civil Procedure

55(c) to vacate the Clerk's entry of default.[3]   For the reasons that follow, the Court

denies the Default Judgment Motion and grants the Vacatur Motion.

## BACKGROUND

### A.    The Bankruptcy Cases and Undisclosed Assets

The Debtors commenced this joint chapter 11 case on October 31, 2016 (the

"Petition Date").  At the time of filing, the Debtors were represented by Joel Shafferman,

Esq. of Shafferman & Feldman, LLP.  On December 1, 2016, the Debtors filed their

---

[1]    Unless otherwise indicated, "ECF Doc. # _" refers to documents filed in the above-captioned adversary proceeding.

[2]    *Motion for Default Judgment, Pursuant to Bankruptcy Rule 7055 and Local Bankruptcy Rule 7055-2* ("Default Judgment Motion"), dated Sept. 18, 2018 (ECF Doc. # 35).

[3]    *Motion of Adriaan Schiltkamp, Robin Martorelli Schiltkamp, J. Jarrad M. Schiltkamp and Kelsey G.H. Schiltkamp to Vacate the Clerk's Entry of Default Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure and Rule 7055 of the Federal Rules of Bankruptcy Procedure* ("Vacatur Motion"), dated Oct. 22, 2018 (ECF Doc. # 50).

schedules and statements, including Schedule A/B: Property ("Schedule A/B").  (Case

No. 16-13037, ECF Doc. # 26, ECF pp. 1-10 of 75.)  The current dispute concerns three

assets that Adriaan owned but failed to list in Schedule A/B:[4]

> 1.    Real property located at 260 SW Cherry Hill Road, Port St. Lucie, Florida (the "Florida Property");

> 2.    A loan receivable exceeding $1.2 million owed by Think Interfaces, Inc. ("Think") evidenced by promissory notes issued to Adriaan by Think (the "Think Notes").  Adriaan only disclosed a 25% equity interest in Think in Schedule A/B.

> 3.    A loan receivable in excess of $200,000 evidenced by a promissory note issued by Caleb Rick and Patricia Rick (the "Rick Note," and together with the Florida Property and the Think Notes, the "Undisclosed Assets") and secured by a mortgage on real property located in Chelsea, Vermont (the "Vermont Property").

Although not scheduled, Adriaan's assets, including the Undisclosed Assets, were

the subject of testimony at the ensuing meetings pursuant to Bankruptcy Code § 341(a)

and examinations pursuant to Federal Bankruptcy Rule 2004.  On December 6, 2016,

the Debtors appeared at a section 341(a) meeting of creditors at the office of the United

States Trustee.  (*Transcript of 341 Meeting of Creditors*, dated Dec. 6, 2016, ECF Doc. #

84-1, Ex. A.)  Paul Schwartzberg, Esq. of the United States Trustee's office asked about

Think.  Adriaan stated that he owned a 25% equity interest in the company and the

other 75% belonged to "a friend of ours."  (*Id.* 21:22-22:11.)  He did not, however,

disclose the Think Notes.

Counsel to creditor Mascoma Savings Bank ("Mascoma"), Kevin Stevens, Esq.,

also questioned Adriaan.  He asked whether either of the Debtors or their business

entities had an interest in property in "Ohio or Port St. Lucie, Florida."  (*Id.* 59:5-10.)

---

[4]    Although the case was filed jointly, the motions focus on Adriaan as the owner of the Undisclosed Assets defined in the text, *infra*.

Adriaan disclosed that there was a house in Port St. Lucie "in which my brother-in-law lives that we helped him out with when he had a child." (*Id.* 59:11-16.) When Mr. Stevens asked for clarification, he elaborated: "We bought it for him. And he's paying the bank. We have it in a CD.[5] He pays the bank every month like a mortgage. But not through the bank." (*Id.* 59:19-22.) When asked whose name was on the property, Adriaan stated: "Our names." (*Id.* 59:25.) When questioned whether it was disclosed in the petition, he said: "Yeah. It should be," (*Id.* 60:4-6), but when asked to point out where this property was disclosed, the Debtors' counsel, Mr. Shafferman, interjected: "Okay. I'm sorry, we'll amend to it. I haven't seen that on – ." (*Id.* 60:8-10.) Upon further questioning, Adriaan confirmed that his brother-in-law had no interest in the Florida Property other than as an occupant and payer of the mortgage. (*Id.* 60:20-23.)

In addition, counsel to U.S. Income Partners and U.S. Assistance Fund ("USIP"), Jeff Dove, Esq., asked questions. (*Id.* 68:6-8.) Adriaan testified that neither he nor his affiliates ever owned property in Chelsea, Vermont, (*Id.* 71:9-19), and when asked about the financial arrangements for the Florida Property, stated: "We put it in a CD. He [Robin's brother] was not even eligible for a mortgage. Not even if I cosigned it. So we put it in CD. He pays off the CD." (*Id.* 72:2-5.) He added: "The bank put the house in a CD for 45,000 and he pays the CD. . . . We will get the CD back when it's all paid off." (*Id.* 72:10-11, 16-17.)

On February 24, 2017, Mr. Stevens, counsel to Mascoma, examined Adriaan pursuant to Bankruptcy Rule 2004. (*Transcript of 2004 Examination of Debtor,*

---

[5]     Adriaan repeatedly testified that the house was in a "CD," but no one asked him to explain and he never explained what that meant.

*Arrien* [sic] *Schiltkamp*, dated Feb. 24, 2017, ECF Doc. # 84-3, Ex. C.)  Adriaan

confirmed that he had a 25% ownership interest in Think and represented that there

were documents showing that ownership interest.  (*Id.* 28:23-29:7.)  Adriaan also gave

further details about the company's business and financial status but did not disclose

any loan or note.  (*Id.* 29:10-32:10.)

      When the questioning turned to the Florida Property, Mr. Stevens asked whether

the Debtors had amended the schedules to include it.  (*Id.* 47:18-24.)  The Debtors'

counsel, Mr. Shafferman, interjected and confirmed that they would be amended to

include the Florida Property.  (*Id.* 47:25-48:5.)  When asked whose name was on the

title, Adriaan responded: "The house is owned by a CD.  That's what the bank

recommended.  And I don't know whose name is on the CD.  I guess we are." (*Id.* 48:8-

10.)  Adriaan and his attorney both represented that they had not seen the deed for the

property and Adriaan asked Robin whether they had a copy of the deed.  (*Id.* 48:13-17.)

She said that she did not know and would have to check.  (*Id.* 48:18-19.)  Adriaan

confirmed that his brother-in-law had only a verbal lease for the Florida Property and

there was no written agreement with respect to the payment of the CD.  (*Id.* 50:8-10;

52:2-5.)  Adriaan stated that he thought the CD was for 25 years, and that his brother-

in-law had been paying off the CD for about 18 years.  (*Id.* 51:21-25.)

      On March 28, 2017, the Debtors filed certain amended schedules, including an

amended Schedule A/B: Property ("Amended Schedule A/B").  (Case No. 16-13037, ECF

Doc. # 117, ECF pp. 1-10 of 13.)  The Amended Schedule A/B again failed to disclose

Adriaan's ownership of the Florida Property, the Think Notes and the Rick Note.  In

both Schedule A/B and the Amended Schedule A/B, where the debtor is asked to

disclose whether there are "[o]ther amounts someone owes you" including, for example "unpaid loans you made to someone else," the Debtors answered "No." (Schedule A/B, ECF p. 7 of 75; Amended Schedule A/B, ECF p. 7 of 13.) There have been no further amendments to the Debtors' schedules.

On March 29, 2017, Mr. Dove, counsel to USIP, examined Adriaan pursuant to Federal Bankruptcy Rule 2004. (*Transcript of Deposition of the Debtor, Adriaan Schiltkamp, taken by the Creditors, Pursuant to Order*, dated Mar. 29, 2017 ("USIP 2004 Tr."), ECF Doc. # 84-4, Ex. D.) When questioned about the ownership of any (undisclosed) real property in Chelsea, Vermont, Adriaan testified: "No. We gave a loan to someone, but he kept it and it's just a loan among friends." (*Id.* 24:22-25:4.) The loan was made to Caleb Rick, approximately $270,000 was owed and was not currently being paid back. (*Id.* 25:5-15.) Adriaan did say that he believed that the loan would be paid back but denied that there was a mortgage or any kind of security collateralizing the loan. (*Id.* 25:25-26:7.) He further said that while he believed that Caleb Rick held title to the Vermont Property, he did not know whether he held title directly or through a corporate entity. (*Id.* 96:23-97:8.)

Mr. Dove questioned Adriaan about a personal financial statement dated as of September 30, 2016, signed on October 7, 2016. (*Id.* 43:7-21.) The financial statement listed the Vermont Property as "Owned Real Estate." (*Id.* 47:4-7.) When asked about it, Adriaan responded: "Yeah. I thought at the time that it was, and it turned out that we don't have title to it. It's just an agreement." (*Id.* 47:8-11.) Mr. Dove also asked Adriaan to explain the arrangement regarding the property in Port St. Lucie, Florida. Adriaan responded:

> Yes.  My brother-in-law — so, Robin's brother — lived in a trailer at one point and then got a girl pregnant and they decided to have the baby and my — then my wife said, my nephew is not going to live in a trailer, so we bought them a little house, and said, okay, you can — you know, we'll sign for the mortgage, we'll guarantee the mortgage, etcetera, the — but his credit was so bad that the bank wouldn't do it, so the bank recommended at the time to put the house in a CD and then he pays the CD over 20 years, I think.  And that is exactly what's happened.  So he's been paying the CD, and then once he's done, then the house goes to — well, actually, we're going to put it in trust.  But the house will leave our ownership and goes indirectly to them.

(*Id.* 48:19-49:14.)

Following the conversion of the case to chapter 7, the Trustee questioned Adriaan at a continued section 341(a) meeting of creditors on August 3, 2017.  (*Transcript of 341 Meeting of Creditors*, dated Aug. 3, 2017, ECF Doc. # 84-2, Ex. B).  Although the schedules disclosed his 25% interest in Think, the Trustee pointed out that his 2014 income tax return did not disclose an equity interest in Think.  (*Id.* 51:9-12.)  Adriaan replied:

> That's correct. . . .  The owner, or the founder, Lana Morrow, is very difficult to deal with when it comes to ownership.  So, I was the only investor in Think for about $3.2 million, I think it was, 3.25 perhaps.  And she would not — she had trouble even giving me less than — more than 10 percent.  I had eight percent at the time.  So, after many negotiations, mostly — excuse me — mostly with Santiago — because he helped me with that, Santiago Rendon,[6] so not only Paraguay but also Think and now the offshore business —

(*Id.* 51:15-24.)  The Trustee elicited testimony from Adriaan that the initial investment was made in December 2010 and "then it was for two years . . . [t]hree years, maybe, you know, up to $3.2 million — $3.25 million."  (*Id.* 52:3-16.)  Adriaan also declared that initially there was no documentation, that it was "a handshake," (*Id.* 52:22-53:2), but

---

[6]    Adriaan identified Santiago Rendon as a New York attorney who speaks Spanish, knows Columbian law and represented Adriaan in a variety of business matters, including investments in Latin America.  (USIP 2004 Tr. 59:14-60:23.)

that later "[w]hen Santiago became involved, we had documents that showed that indeed I was then owner of 8, then 10, then 18, and eventually 25 percent . . . of Think Interfaces, Inc." (*Id.* 53:4-9.)

The Trustee also asked about the Florida Property, noting that the schedules had not yet been amended. (*Id.* 57:13-16.) Adriaan responded, "[w]ell, but I think it's because the bank owns it . . . through a CD." (*Id.* 57:19-22.) The Debtors' attorney, Mr. Shafferman, interjected: "Well, that was why there was confusion originally on the terms of it, but we'll – we can amend to add that." (*Id.* 57:24-28:1.) Later, Adriaan confirmed he believed that the CD owned the house and that his brother-in-law had about a year left of payments on the CD, after which "then conceivably he could own the house." (*Id.* 80:13-81:7.) He also confirmed that the Debtors "paid for the CD." (*Id.* 81:17-82:2.)

The Trustee also asked the Debtors if they ever had "any interest in property in Chelsea, Vermont?" (*Id.* 82:5-7.) Adriaan explained that a loan was made to their friends, Caleb and Patricia Rick, to prevent a foreclosure of their home. (*Id.* 82:19-83:7.) The Debtors could not recall the exact amount of the loan, but thought it was somewhere between $200,000 and $300,000. (*Id.* 83:24-84:7.) The Debtors told the Trustee that the loan was made in 2011 and they only received four months of payments. (*Id.* 84:14-20.) Adriaan did not know whether there was a promissory note or other documentation for the loan but said that he could "ask Santiago. Santiago figured it out later for us." (*Id.* 84:21-25.)

On October 23, 2017, creditor Ford Motor Credit Company ("Ford") examined Adriaan pursuant to Federal Bankruptcy Rule 2004. (*Transcript of Deposition of*

*Adriaan Schiltkamp*, dated Oct. 23, 2017, ECF Doc. ## 84-5 & 84-6, Ex. E, Pt. 1 & 2.)
Counsel to Ford, Craig Leslie, Esq., asked Adriaan whether he ever owned property in
Chelsea, Vermont.  (*Id.* 13:7-8.)  He responded: "I'm not sure.  I gave a loan to – actually
my daughter gave a loan to friends of ours who were about to lose their house there in
Chelsea, and it was just a handshake loan, and we – I don't – I don't think that we ever
received anything from them as a title or anything."  (*Id.* 13:9-15.)  Mr. Leslie pressed
him on whether he or his wife ever held the deed to the Vermont Property or considered
that they owned it.  Adriaan responded: "Right, well, okay.  The owner kept saying that
we owned it, but I don't have any documentation for it; but he kept saying it's yours and
that's your security, it's your collateral and – ."  (*Id.* 14:8-12.)  He added that there was
no written mortgage.  (*Id.* 14:13-14.)  Mr. Leslie questioned Adriaan about a personal
financial statement he gave to Ford, dated February 28, 2014.  (*Id.* 44:20-45:23.)  Under
real estate investments, Adriaan listed the Florida Property and the Vermont Property.
(*Id.* 48:14-23.)  Mr. Leslie questioned Adriaan about another personal financial
statement, dated September 30, 2016, which also listed the Florida Property and the
Vermont Property.  (*Id.* 54:14-23; 55:25-56:5.)

## B.    The Adversary Proceeding and Entry of Default

On May 21, 2018, the Trustee filed the Complaint in this adversary proceeding
against the Debtors, their children A. Jarrad M. Schiltkamp ("Jarrad") and Kelsey G.H.
Schiltkamp ("Kelsey," and together with the Debtors and Jarrad, the "Schiltkamp
Defendants"), Robin's mother Grace Martorelli, Burgis Sethna a/k/a Burgess Sethna
a/k/a Seth Burgess and Wingfield Capital Corporation.   Aside from the Undisclosed
Assets, the adversary proceeding primarily concerns the interests in numerous valuable

items of art, books, jewelry and other collectables (the "Disputed Assets") that the Trustee asserts belonged to the Debtors on the Petition Date and were concealed and/or transferred to family members or other third parties pre- or post- petition to shield the items from creditors.  The Complaint contains four counts against Adriaan, each of which seeks to deny him a discharge under 11 U.S.C. § 727(a): Count 12 (seeking to deny a discharge under section 727(a)(2)), Count 14 (seeking to deny a discharge under section 727(a)(3)), Count 16 (seeking to deny a discharge under section 727(a)(4)), and Count 18 (seeking to deny a discharge under section 727(a)(5)).  Only Count 16 mentions the Undisclosed Assets.

The last day to move against or answer the Complaint fell on July 23, 2018 and the Court scheduled a pre-trial conference for July 31, 2018.  (ECF Doc. # 6; ECF Doc. # 9.)  On July 19, 2018, Adriaan sent an email to the Court stating that he believed a pre-trial conference was scheduled for July 23, 2018 and a hearing on a motion for summary judgment was scheduled for July 31, 2018.  (ECF Doc. # 14, ECF p. 1 of 2.)  He requested a four-week delay because he needed to retain new counsel; Shafferman was unwilling to represent his family in the adversary proceeding unless he paid the outstanding fees and an additional retainer.  (*Id.*)  The Court "memo endorsed" his email stating that it was not familiar with the proceedings referred to in the email and no conference was scheduled for July 23, 2018.  (*Id.* at ECF p. 2 of 2.)

The pre-trial conference had been adjourned to August 23, 2018.  (ECF Doc. # 17.)  On August 12, 2018, Adriaan sent another email to the Court asking for a further extension of the deadline to answer the Complaint (the Trustee had extended his deadline to August 13, 2018 but refused to extend it further).  (ECF Doc. # 20, ECF p. 3

of 5.)  He stated that he had found new counsel and was in the process of gathering

funds for a retainer.  (*Id.*)  The new counsel had suggested that he seek a further

extension to the end of September, which would give him enough time to become

familiar with the case.  (*Id.*)

The Trustee objected.  She had given the defendants multiple extensions of time

to respond to the Complaint and was not inclined to consent to a third extension or

another adjournment of the pre-trial conference.  (*Id.* at ECF p. 2 of 5.)  Adriaan replied

to the Trustee's email, again requesting an extension to late September to give him time

to obtain the funds needed to pay the retainer and allow new counsel time to become

familiar with the case.  (*Id.* at ECF p. 1 of 5.)  On August 14, 2018, the Court "memo

endorsed" his email stating that it "would consider the Defendants' request at the next

status conference provided proposed counsel attends and explains the status of the

Defendants' efforts to retain him or her."  (*Id.*)

The status conference went forward on August 23, 2018 but neither the Debtors

nor their proposed counsel appeared.  On August 24, 2018, Adriaan sent another email

to the Court, asserting inaccurately that the Court's previous memorandum

endorsement "stated that the Court would take my situation of not yet having legal

counsel into consideration and that I would be notified when the next court date will

be." (ECF Doc. # 23, ECF p.1 of 1.)  He had not received any such notification and

assumed that "yesterday's court date ha[d] been moved up."  (*Id.*)  He asked when a new

court date would be scheduled and asked that the new date be towards the end of

September.  (*Id.*)  The Court "memo endorsed" his email stating that no new court date

had been set.  (*Id.*)

The Trustee also responded to Adriaan's August 24, 2018 email.  She informed Adriaan that the pretrial conference went forward as scheduled, the Court denied the application for a further extension of time to answer because neither Adriaan nor the new proposed counsel appeared, and she intended to seek entry of a default.  (ECF Doc. # 24, ECF p. 1 of 8.)  Adriaan responded to the Trustee's email on August 24, 2018.  He asked her not to seek a default and repeated details of his attempts to hire a new attorney and collect funds for a retainer.  (ECF Doc. # 25, ECF p. 1 of 9.)

On September 10, 2018, the Clerk entered a default against the Schiltkamp Defendants.  (ECF Doc. # 32.)

## C.    The Default Judgment Motion and Vacatur Motion

The Trustee moved to enter a default judgment against the Schiltkamp Defendants.  They objected and filed the Vacatur Motion.  The Court denied the Default Judgment Motion and granted the Vacatur Motion from the bench with one exception: it reserved decision on the motions as they related to the false oath claim under Bankruptcy Code § 727(a)(4) based on Adriaan's failure to schedule the Undisclosed Assets.  His counsel maintained that Adriaan had supplemented his disclosures at the section 341(a) meeting of creditors although he had never included the Undisclosed Assets in the original or amended Schedule A/B.  The Court directed Adriaan's counsel to provide the 341 transcripts and identify the relevant portions, (Hr'g Tr. 31:12-13, Nov. 29, 2018, ECF Doc. # 80), and allowed the parties to submit additional briefing a week

after the transcripts were submitted.  (*Id.* 38:5-10.)  Adriaan's counsel filed the relevant transcripts and thereafter both sides provided the Court with supplemental briefing.[7]

## DISCUSSION

### A.    *Vacating the Clerk's Default*

Rule 55(c) of the Federal Rules of Civil Procedure allows a court to set aside the entry of default for "good cause."[8]  "Under Rule 55(c), the factors governing whether a party should be relieved from default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."  *Men's Sportswear, Inc. v. Sasson Jeans, Inc.* (*In re Men's Sportswear, Inc.*), 834 F.2d 1134, 1138 (2d Cir. 1987); *accord Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1307 (2d Cir. 1996).[9]  The standards for setting aside a default or a default judgment are the same, but courts apply them more rigorously in the case of a default judgment because the latter more deeply implicates the concepts of finality and litigation repose.

---

[7]    Adriaan also filed an *Affidavit of Adriaan Schiltkamp in Support of Supplemental Brief Regarding Defendants' Motion to Vacate Clerk's Entry of Default and Trustee's Motion for Default Judgment*, dated Dec. 13, 2018 (ECF Doc. # 70). The affidavit generally denies his wrongful intent and points to testimony regarding the Undisclosed Assets at the section 341(a) meetings and the Federal Bankruptcy Rule 2004 examinations.  Adriaan should have submitted this affidavit, if at all, with the Vacatur Motion or with his initial opposition to the Default Judgment Motion.  His belated submission of the supplemental affidavit after the hearing on the motions, when the Court limited its request to transcripts and legal memoranda, will not be considered.  *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. Appx. 453, 456 (2d Cir. 2011) (summary order) (upholding the District Court's exclusion of a belated supplemental affidavit filed for the first time with the defendant's rely papers, that elaborated on his substantive defenses).

[8]    Rule 55(c) states: "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Rule 55(c) is made applicable to this adversary proceeding by FED. R. BANKR. P. 7055.

[9]    A court may also consider other relevant equitable factors, such as whether the failure to follow a rule of procedure was a mistake made in good faith, and whether the entry of default would lead to a harsh result.  *See Enron Oil Corp.*, 10 F.3d at 96.

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996); *Enron Oil Corp.*, 10 F.3d at 96; *see Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (describing the standard under Rule 55(c) as "lenient").  Although a defendant is not free to flout the rules of procedure without consequence, defaults are generally disfavored, and there is a "strong preference for resolution of disputes on their merits." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986); *accord Enron Oil Corp.*, 10 F.3d at 96 ("[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party."); *Meehan v. Snow*, 652 F.2d at 277 ("While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort.").

Adriaan has demonstrated that his default was not willful.  "Willfulness" refers to conduct that is deliberate, *see Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 634-35 (2d Cir. 1998), *cert. denied*, 525 U.S. 1106 (1999), as opposed to negligent or careless. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998), *cert. denied*, 525 U.S. 931 (1998); *Am. Alliance Ins. Co.*, 92 F.3d at 61.  Adriaan defaulted because he was trying to raise the money to hire a new lawyer but was unable to do so by the last deadline the Trustee had granted.  I attribute the failure to attend the August 23, 2018 conference to the same cause.  Once he retained counsel, he proceeded promptly.  His counsel filed a notice of appearance on October 9, 2018 (ECF Doc. # 42), and within two weeks, filed opposition to the Default Judgment Motion and made the Vacatur Motion.  (*See* ECF Doc. ## 49, 50-52.)

Adriaan also demonstrated that the Trustee will not be prejudiced.  Legal prejudice occurs when the non-defaulting party's ability to proceed with its case has been impaired.  *See MacEwen Petroleum, Inc. v. Tarbell*, 173 F.R.D. 36, 40 (N.D.N.Y. 1997), *appeal dismissed*, 136 F.3d 263 (2d Cir. 1998).  Delay alone does not constitute prejudice.  *Enron Oil Corp.*, 10 F.3d at 98.  Rather, the delay must "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal quotation marks and citation omitted).  The Trustee does not suggest any prejudice aside from delay if Adriaan's default is vacated and the case is tried on the merits.

Adriaan's meritorious defense raises a more difficult issue.  Although the movant need not establish a meritorious defense conclusively, it "must present evidence of facts that, if proven at trial, would constitute a complete defense."  *McNulty*, 137 F.3d at 740 (internal quotation marks and citation omitted); *accord Sony Corp.*, 800 F.2d at 320-21.  Conclusory denials or statements lacking factual support are insufficient.  *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001); *Enron Oil Corp.*, 10 F.3d at 98; *Sony Corp.*, 800 F.2d at 320-21.  The question is whether Adriaan presented evidence which, if believed, negated one or more elements of the Trustee's objection under 11 U.S.C. § 727(a)(4).

Bankruptcy Code § 727(a)(4)(A) mandates the denial of a discharge to the debtor who knowingly makes a material, false statement with fraudulent intent.[10]  *Dubrowsky v. Estate of Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 571-72 (E.D.N.Y. 2000); *Nof*

---

[10]    Section 727(a)(4)(A) provides that the Court shall deny the debtor his general discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

v. Gannon (*In re Gannon*), 173 B.R. 313, 319-20 (Bankr. S.D.N.Y. 1994); *Zitwer v. Kelly*
(*In re Kelly*), 135 B.R. 459, 461-62 (Bankr. S.D.N.Y. 1992).  The plaintiff must establish
by a preponderance of the evidence that the debtor (1) made a statement under oath, (2)
the statement was false, (3) the debtor knew the statement was false, (4) the debtor
made the statement with fraudulent intent, and (5) the statement related materially to
the bankruptcy case.  *Moreo v. Rossi* (*In re Moreo*), 437 B.R. 40, 59 (E.D.N.Y. 2010);
*Vidomlanski v. Gabor* (*In re Gabor*), Adv. No. 06-01916 (ALG), 2009 WL 3233907, at
*7 (Bankr. S.D.N.Y. Oct. 8, 2009); *Bank of India v. Sapru* (*In re Sapru*), 127 B.R. 306,
314 (Bankr. E.D.N.Y. 1991).  The bankruptcy petition and schedules of a debtor are
considered statements under oath, *Gabor*, 2009 WL 3233907, at *7; *Gannon*, 173 B.R.
at 320, and both omissions and affirmative misstatements can constitute false
statements under § 727(a)(4)(A).  *Gabor*, 2009 WL 3233907, at *7; *Forrest v. Bressler*
(*In re Bressler*), 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008).  Testimony at a section 341
meeting or other examinations of a debtor under oath also qualify as a statement under
oath for purposes of section 727(a)(4)(A).  *St. Clair v. Cadles of Grassy Meadows II,
L.L.C.*, 550 B.R. 655, 670-75 (E.D.N.Y. 2016); *Moreo*, 437 B.R. at 61.

Adriaan's schedules and section 341(a) and Rule 2004 testimony were made
under oath.  Furthermore, there is no question regarding Adriaan's ownership of the
Undisclosed Assets.  The Trustee sold the Florida Property, (*see Order (A) Authorizing
the Sale of Real Property Known as 260 SW Cherry Hill Road, Port St. Lucie, Florida,
Subject to Higher or Better Offers and Free and Clear of All Liens, Claims and
Encumbrances; and (B) Adjourning Hearing on Trustee's Request for Authority to
Compensate Atlantic Shores Realty Expertise, the Real Estate Broker*, dated Oct. 18,

2018 (Case No. 16-13037, ECF Doc. # 305)), which she could not have done (and no title insurer would have insured title) if the estate did not have title.  In addition, the Trustee brought separate litigations against Think and Caleb and Patricia Rick, attached the Think Notes and the Rick Note, respectively, to the complaints and the notes run in favor of Adriaan as the lender.  (*See Mazer-Marino v. Think Interfaces, Inc.* (*In re Schiltkamp*), Adv. Proc. No. 17-01213 (JLG) (ECF Doc. # 1));[11] *Mazer-Marino v. Rick* (*In re Schiltkamp*), Adv. Proc. No. 18-01694 (SMB) (ECF Doc. # 1).)[12]

Finally, the Undisclosed Assets are material to the case.  A statement is material if it bears on the discovery of estate property or the debtor's business dealings.  *Gannon*, 173 B.R. at 319–20.  An omission may be material even if the asset is of questionable value.  *Premier Cap., LLC v. Crawford* (*In re Crawford*), 841 F.3d 1, 8-9 (1st Cir. 2016); *Palantine Nat'l Bank v. Olson* (*In re Olson*), 916 F.2d 481, 484 (8th Cir. 1990); *see In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974)("Materiality does not require a showing that the creditors were prejudiced by the false statement.") representing several hundred thousand dollars of potential value.

The more difficult elements relate to *scienter*.  On the one hand, a debtor will not be denied a discharge where the "omission or error resulted from an inadvertent or honest mistake . . . ."  *Baron v. Klutchko* (*In re Klutchko*), 338 B.R. 554, 568 (Bankr.

---

[11]    The Trustee settled with Think for $25,000.00.  (*See Stipulation and Order Resolving Adversary Proceeding,* dated June 27, 2018 (Adv. Pro. No. 17-01213, ECF Doc. # 29).)

[12]    The Trustee obtained default judgments against Caleb and Patricia Rick in the sum of $370,057.87.  (*See Judgment by Default Against Defendant Caleb B. Rick*, dated Feb. 6, 2019 (Adv. Pro. No. 18-01694, ECF Doc. # 10-1)); *Judgment by Default Against Defendant Patricia I. Rick*, dated Feb. 6, 2019 (Adv. Pro. No. 18-01694, ECF Doc. # 11-1).)

S.D.N.Y. 2005); *see also Keefe v. Meeker* (*In re Rudolph*), 233 F. Appx. 885, 889 (11th Cir. 2007) (per curium) ("Discharge may not be denied where the untruth was the result of mistake or inadvertence."). On the other hand, while ignorance or carelessness alone is not enough to establish fraudulent intent, "multiple smaller falsehoods can aggregate into a 'critical mass' that does indicate the requisite intent." *Gordon v. Tese-Milner* (*In re Gordon*), 535 B.R. 531, 537 (S.D.N.Y. 2015) (citation omitted); *accord Borges v. Placeres* (*In re Placeres*), 578 B.R. 505, 521 (Bankr. S.D.N.Y. 2017) ("[R]eckless indifference to or disregard of the truth is the equivalent of fraud for the purpose of § 727."). In determining whether fraudulent intent exists under section 727(a)(4)(A), courts can consider "the debtor's level of financial sophistication." *Beach Lane Mgmt., Inc. v. White* (*In re White*), Adv. P. No. 13-01108 (SMB), 2015 WL 9274771, *11 (Bankr. S.D.N.Y. Dec. 18, 2015); *see also In re Placeres*, 578 B.R. at 521; *McCarthey Inv. LLC v. Shah* (*In re Shah*), Adv. No. 08-01762 (SMB), 2010 WL 2010824, *4 (Bankr. S.D.N.Y. May 13, 2010).

Admittedly, Adriaan's section 341(a) and Rule 2004 testimony regarding the Undisclosed Assets was inconsistent and confusing. Nevertheless, it does provide some evidence, if believed, that negates knowledge of falsity and fraudulent intent. Adriaan testified at various points that he thought the bank owned the Florida Property, his funding of Think was a worthless equity investment which he disclosed rather than a loan, and the Rick Note evidenced a loan made by his daughter. He also referred multiple times to his lawyer Santiago Rendon, who "helped us with that" or "figured it out later for us." Furthermore, he did not amend his schedules even after the Undisclosed Assets were brought to his attention and his lawyer stated that the

schedules would be amended.  This may imply that upon reflection, there were still questions in Adriaan's mind regarding whether he owned the Undisclosed Assets.

Obviously, Adriaan will have to explain the many inconsistencies relating to his assets.  Nevertheless, given the preference for trying disputes on the merits, the harshness of a denial of a debtor's discharge, *State Bank of India v. Chalasani,* 92 F.3d at 1310, and the rule that discharge provisions "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt,'" *id.* (quoting *Bank of Pennsylvania v. Adlman* (*In re Adlman*)*,* 541 F.2d 999, 1003 (2d Cir. 1976)); *accord Berger & Assocs. Attorneys, P.C. v. Kran (In re Kran)*, 760 F.3d 206, 210 (2d Cir. 2014), it is preferable to vacate Adriaan's default and try the merits of the Trustee's objections to his discharge, which also include charges relating to the Disputed Assets and the failure to account for the disposition of the assets identified in financial statements.

Accordingly, the Default Judgment Motion is denied as to Adriaan and the Vacatur Motion is granted as to Adriaan.  The Court has considered the parties' other arguments and concludes that they are without merit.  The Trustee is directed to settle an order on notice and schedule a conference.

Dated:   New York, New York
         March 6, 2019

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge